IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

XTRIA LLC, §
 §
 Plaintiff, §
 § Civil Action No. 3:07-CV-0160-D
VS. §
 §
TRACKING SYSTEMS, INC., §
 §
 Defendant. §

MEMORANDUM OPINION
AND ORDER

Defendant Tracking Systems, Inc. ("TSI") moves anew under Fed. R. Civ. P. 12(b)(6) to dismiss this action for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion as to plaintiff's declaratory judgment claim and otherwise denies it.

I

Plaintiff Xtria LLC ("Xtria") sues TSI for breach of contract and seeks a declaratory judgment arising from conduct by International Insurance Alliance, Inc. ("IIAI"), a TSI affiliate,[1] that Xtria contends violates a Settlement Agreement and Release ("Release") between Xtria and TSI. In 2000 Xtria and TSI entered into an Asset Purchase Agreement for a data management system.[2] In

---

[1]As the court notes *infra* at § III(B), TSI does not contest for purposes of this motion that IIAI is an affiliate.

[2]In deciding this motion, the court construes the amended complaint in the light most favorable to Xtria, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Xtria's favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). The court recounts the

2004 Xtria and IIAI entered into a Sales Representative Agreement ("Sales Agreement"). In 2006 Xtria and TSI entered into the Release. In pertinent part, the Release releases Xtria from all liabilities and/or claims arising from any contracts or agreements between Xtria and TSI and includes a covenant not to sue on the same matters. Although Xtria and TSI are signatories to the Release, it defines the term "TSI" to include not only TSI but also its past, present, and future affiliates.

According to Xtria, under the terms of the Release, all of its obligations to IIAI under the Sales Agreement were released. Nevertheless, in December 2006 IIAI filed an arbitration demand against Xtria, alleging that Xtria had suffered damages relating to the Sales Agreement. Xtria asserted unsuccessfully in the arbitration proceeding that the demand should be dismissed in accordance with the terms of the Release.

Xtria then filed this diversity action, alleging that TSI had breached the Release. Xtria also seeks a judgment declaring the rights, status, and legal relations of Xtria and TSI under the Release and the impact of the Release on the Sales Agreement. Specifically, Xtria asks the court to declare, in accordance with the terms of the Release, that all of Xtria's obligations under the Sales Agreement are released and are null and void.

TSI initially moved to dismiss Xtria's complaint under Rule

---

background facts under this standard.

12(b)(6) for failure to state a claim on which relief can be granted. The court granted the motion, but it also gave Xtria leave to file an amended complaint. *See Xtria LLC v. Tracking Sys., Inc.,* 2007 WL 1791252, at *4 (N.D. Tex. June 21, 2007) (Fitzwater, J.) ("*Xtria I*").[3] Xtria filed a first amended complaint ("amended complaint"), alleging that under the terms of the Release, TSI is obligated to control IIAI's actions, and that TSI breached the Release by not preventing, or causing dismissal of, IIAI's pending arbitration proceeding against Xtria. Xtria also reasserts its claim for declaratory judgment, and it seeks specific performance or a permanent mandatory injunction to the extent necessary to achieve complete relief. Specifically, Xtria requests that the court enter judgment declaring (1) the rights, status, and legal relations among the parties to the Release and the impact of the Release on the Sales Agreement; (2) that all of Xtria's obligations under the Sales Agreement are released and null and void; and (3) that the arbitration proceeding is without merit and to be dismissed immediately with prejudice to the rights of

---

[3]The court's decision in *Xtria I* is not inconsistent with today's decision. In *Xtria I* the court dismissed Xtria's complaint, concluding that it did not "allege how TSI breached the Release based on IIAI's conduct." *Xtria I*, 2007 WL 1791252, at *2. In the first amended complaint ("amended complaint"), Xtria alleges facts regarding the relationship of control between TSI and IIAI, IIAI's non-party status to the Release, and the terms of the Release that plausibly confer a contractual obligation on TSI for IIAI's conduct. Furthermore, in the amended complaint, Xtria specifies in its breach of contract claim the acts and conduct of TSI that allegedly breached the Release.

IIAI to proceed further. Xtria requests specific performance and a permanent injunction requiring TSI to cause the IIAI-Xtria arbitration proceeding to be dismissed with prejudice.

TSI moves anew for dismissal under Rule 12(b)(6), contending that the plain terms of the Release impose no obligation on TSI as to IIAI's conduct.

## II

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, ___ F.3d ___, 2007 WL 2200004, at *10 (5th Cir. Aug. 2, 2007) (quoting *Bell Atl. Corp. v. Twombly,* ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl.*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal Breaches Litig.*, ___ F.3d ___, 2007 WL 2200004, at *10 (quoting *Bell Atl.*, 127 S.Ct. at 1965). "The court accepts all well-pleaded facts as true, viewing them in the light

most favorable to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

III

A

TSI maintains that Xtria's amended complaint is insufficient to assert a claim for breach of contract. It posits that the explicit terms of the Release do not impose any obligations on TSI concerning IIAI's conduct. For essentially the same reasons, TSI also moves to dismiss Xtria's claim for a declaratory judgment, specific performance, and injunctive relief. Xtria responds that a party can contractually agree to control the actions of a third party and, under the Release, TSI agreed to control IAII and cause it not to file, and to dismiss, the arbitration proceeding.

To establish a claim for breach of contract under Texas law, Xtria must prove (1) the existence of a valid contract, (2) Xtria performed or tendered performance of its duties under the contract, (3) TSI breached the contract, and (4) Xtria suffered damages as a result of the breach. *Xtria I*, 2007 WL 1791252, at *2 (citing *Lewis v. Bank of Am. N.A.*, 343 F. 3d 540, 544-45 (5th Cir. 2003)). TSI argues that the amended complaint fails to satisfy the third and fourth elements. The third element requires that Xtria point to the conduct of TSI that constitutes a breach of contract. Xtria argues that it is not IIAI's underlying conduct (bringing the

arbitration demand) that is the basis for its suit, but TSI's failure to cause IIAI not to file, or to secure dismissal in response to Xtria's demand, the arbitration proceeding. TSI counters that the Release imposes no such contractual obligation, and that the amended complaint therefore suffers the same flaw as did the complaint, because it is based on third-party conduct.

B

Xtria alleges in its amended complaint that TSI's obligation to control the acts of IIAI arises from the terms of the Release.[4] To support this interpretation, Xtria cites two provisions of the Release. Section 1.3 provides, in pertinent part: "The term "TSI" means [TSI] . . . as well as all its past, present and future affiliates . . . ." Release § 1.3. Xtria alleges, and TSI does not contest for the purposes of this motion, that IIAI is an affiliate of TSI. Xtria also refers to § 3.1.1. ("the Release Clause"), which provides:

---

[4]The court must interpret the Release to decide the merits of TSI's motion. The court can for this purpose consider the full contents of the Release. "In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336F.3d375,379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)). The court does not rely upon the legal conclusions pleaded in Xtria's amended complaint that are disguised as factual allegations. *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.). Therefore, the court may interpret the Release as a matter of law at the Rule 12(b)(6) stage and rely on that interpretation in deciding TSI's motion.

> TSI does hereby release, remise, covenant not to sue and forever discharge: [Xtria] as follows: from and against all manner of action, any and all causes of action . . . relating to or arising from (i) the TSI-Xtria Agreement, and/or (ii) any oral or other written agreement between TSI and Xtria entered into prior to the Effective Date.

*Id.* § 3.1.1. Under § 1.0 of the Release, the "definitions apply to the listed terms wherever those terms appear throughout the Agreement." *Id.* § 1.0.

Because the term "TSI" has been defined to include TSI and its affiliates, both parties agree that the covenant not to sue applies to TSI and IIAI. Beyond this uncontested interpretation of the Release, however, the court must first determine whether the Release Clause makes TSI contractually responsible for IIAI's conduct so that the court can address second whether Xtria has pleaded sufficient facts to state a breach of contract claim.

TSI maintains that the plain terms of the Release do not impose duties on it with respect to its affiliates. It contends that a breach of contract claim based on IIAI's underlying conduct would be proper only against IIAI. The court agrees with TSI that the Release does not explicitly impose on TSI any duties concerning its affiliates. XTRIA also maintains, however, that TSI agreed under the Release that its affiliates would not sue Xtria. Xtria essentially argues that, viewed in tandem with § 1.3, which defines the term "TSI" to include TSI's affiliates, the Release Clause not only incorporates TSI and its affiliates, it also binds TSI to

exercise control over its affiliates, including IIAI. Xtria contends that because IIAI is not a party to the Release, "the only logical interpretation of the [Release] that does not render the covenant not to sue by the affiliates meaningless is that [TSI] is agreeing to cause them not to sue." P. Br. 5. TSI responds that the Release's plain terms do not impose such an obligation, but it does not address the significance of Xtria's reliance on the fact that IIAI is not a party to the Release. Indeed, TSI insists, as it did in its first motion to dismiss, that Xtria's lawsuit is proper, if at all, only against IIAI.

The inclusion of the affiliates in the Release Clause, through the provision that defines TSI as including its affiliates, coupled with IIAI's absence as a signatory to the agreement, suggests that TSI is assuming the obligation of its affiliates' performance. Because IIAI is not a signatory to the Release, this obligation plausibly falls on TSI. Otherwise, there is no apparent purpose for including TSI's affiliates in the definition of "TSI" and for providing that the definitions apply "wherever those terms appear throughout the Agreement." The Release could have defined the term "TSI" in a way that excluded affiliates, or the Release Clause could have modified the definition of the term "TSI" for that provision so as to limit it to TSI's conduct alone. In arriving at this interpretation of the Release, the court "examine[s] and consider[s] the entire writing in an effort to harmonize and give

effect to all the provisions of the contract so that none will be rendered meaningless." *Bank One, Tex., N.A. v. FDIC*, 16 F.Supp.2d 698, 707 (N.D. Tex. 1998) (Fitzwater, J.) (citations omitted).[5]

Xtria also avers that during all relevant times, TSI and IIAI were under the control of the same individuals, and that TSI had the right and ability to control, operate, manage, or direct IIAI's activities. This allegation reinforces an interpretation of the Release under which TSI assumed the obligation not to allow IIAI to bring actions against Xtria. Accepting this factual allegation as true, as the court must when deciding TSI's Rule 12(b)(6) motion, the Release can reasonably be interpreted to provide that TSI—on behalf of the affiliates over which it exerted control—assumed performance of the covenant not to sue.

Xtria's interpretation of the Release, however, is not the only reasonable one. TSI's reliance on the fact that the terms of

---

[5]Under Texas law, the court's primary concern when interpreting a contract is to ascertain the parties' intentions as expressed objectively in the contract. In doing so, the court must examine and consider the entire writing in an effort to harmonize and give effect to all contractual provisions, so that none will be rendered meaningless. Language should be given its plain and grammatical meaning unless it definitely appears that the parties' intention would thereby be defeated. Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous, and the court will construe it as a matter of law. A contractual provision is ambiguous when its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one interpretation. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole, in light of the circumstances present when the contract was entered. *Bank One, Tex., N.A.*, 16 F.Supp.2d at 707.

the Release do not create explicit obligations regarding IIAI's conduct has force. Moreover, the Release can reasonably be read to include TSI's affiliates within the scope of the term "TSI" for the purpose of providing Xtria a defense to an action instigated against it by a TSI affiliate, such as IIAI, not to create an obligation by TSI to superintend its affiliates.

Accordingly, accepting Xtria's well-pleaded facts as true, the court holds that Xtria's construction of the Release, based on the allegations of the amended complaint, sufficiently pleads facts that state a breach of contract claim because they establish one reasonable interpretation of the Release.

C

TSI maintains that Xtria has failed to demonstrate how the alleged breach of contract caused it damages. Xtria alleges in its amended complaint that it has suffered money damages as a result of TSI's breach of contract. Specifically, it alleges several costs, including attorney's and arbitration fees and expenses related to the arbitration proceeding and its present suit, loss of employee time and productivity, and the risk of loss in the arbitration proceeding. TSI does not reject the nature of the damages claims; it argues instead that the claims suffer the same defect as does Xtria's breach of contract action: that the alleged damages flow from IIAI's conduct, not TSI's. Because the court has already concluded that Xtria's breach of contract claim is sufficiently

pleaded, it also holds that Xtria has adequately pleaded damages.

IV

TSI makes the additional argument in its reply brief that a release can only be raised as an affirmative defense, that a release does not give rise to a cause of action, and that therefore suit before this court is improper. Because TSI did not address this issue until it filed its reply brief, the court will not consider the argument. *See, e.g., Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.). If TSI were allowed to present new arguments through a reply brief, it would effectively deny Xtria a fair opportunity to respond. *Cf. Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (Fitzwater, J.) ("Of equal importance is the rule that the nonmovant should be given a fair opportunity to respond to a motion.").

V

TSI also seeks dismissal of Xtria's declaratory judgment action, contending that it duplicates Xtria's breach of contract claim and does not meet the causation requirement of a declaratory judgment action. The court agrees on the basis of TSI's first argument. It need not, therefore, address the second.

In *Xtria I* the court dismissed Xtria's declaratory judgment claim "without prejudice to Xtria's amending its complaint to

allege a declaratory judgment action that *would not be resolved in the context of its breach of contract claim*." (emphasis added). *Xtria I,* 2007 WL 1791252, at *3. As framed in the complaint, the declaratory judgment action essentially duplicated the breach of contract claim. In its brief, Xtria explains that it is now seeking declaratory relief "only as an additional (or alternative) remedy, in conjunction with equitable remedies and in addition to money damages to [e]nsure that [Xtria] can be afforded complete relief." P. Br. 7. This explanation for *why* it is seeking a declaratory judgment does not bring Xtria closer to alleging a declaratory judgment action that would not be resolved in the context of its breach of contract claim, as required in *Xtria I*. Accordingly, the court holds that there is no need for Xtria to prosecute a separate declaratory judgment action, and it dismisses this claim.

VI

TSI argues that Xtria has alleged no facts in support of its requests for specific performance and injunctive relief. Xtria requests through both forms of relief that the court order TSI to cause the arbitration proceeding to be dismissed with prejudice to the rights of IAII to proceed further. Because the requests for an injunction and for specific performance seek the same type of relief, the court will analyze them together.

TSI offers three primary reasons for dismissing Xtria's

request for specific performance. First, TSI maintains that Xtria has not pleaded facts demonstrating that TSI breached the Release, and therefore there is no performance to be enforced. For the reasons explained above, the court declines to dismiss Xtria's request for specific performance claim on this basis.

Second, TSI contends that Xtria has failed to identify the exact terms of the Release that would entitle it to specific performance. It maintains that there are no terms in the Release that require that it control IIAI's actions in the arbitration proceeding, which is the nature of the specific performance that Xtria requests.

The court's ability to grant specific performance is contingent on resolving whether the Release Clause makes TSI answerable for the actions of IIAI. The fact that the obligation is not explicitly stated in the Release, however, is not fatal to Xtria's request for specific performance. "The standard is one of reasonable certainty. That the parties proffer different interpretations as to their obligations under a contract does not mean that their dispute is unreasonable or the contract is unworkable." *Rodriguez v. VIA Metro. Transit Sys.*, 802 F.2d. 126, 130 (5th Cir. 1986) (internal citations omitted) (affirming grant of specific performance on basis of reasonable certainty even though contract did not fully specify the terms enforced by the lower court). Applying this standard, the court holds that the

Release can be interpreted to require with reasonable certainty that TSI must cause IIAI to dismiss the arbitration proceeding with prejudice.

Third, TSI posits that Xtria has failed to plead facts that demonstrate that it has no adequate remedy at law. Xtria responds that it is only seeking specific performance to the extent necessary to grant complete relief; that is, its request for specific performance only applies if damages are inadequate, or as an alternative to a damage award.

By TSI's own argument, the question whether specific performance can be awarded depends on an assessment of the adequacy of damages. It is well settled that alternative forms of relief can be pleaded. *See, e.g., United States ex rel. Purcell v. MWI Corp.,* 254 F.Supp.2d 69, 78-79 (D.D.C. 2003) (noting that under Rule 8(e)(2), plaintiff may plead alternative theories of liability, regardless whether the theories are consistent with one another, and rejecting argument that plaintiff was precluded from proceeding on claims for damages and for equitable relief). Because the court cannot determine whether Xtria has an adequate remedy at law without resolving the underlying claim, it is unable to hold that Xtria is precluded from obtaining specific performance by the possibility of recovering damages.

TSI asserts in a footnote that Xtria also fails to state a claim for injunctive relief because the injunction it seeks would

improperly affect the rights of IIAI, who is not a party. TSI relies on *Harris County, Texas v. Carmax Auto Superstores Inc.*, 177 F.3d 306 (5th Cir. 1999), for the principle that an injunction can be issued to bind non-parties only when they "are so identified in interest with those named in the decree that it would be reasonable to conclude that their rights and interests have been represented and adjudicated in the original injunction proceeding. In other words, the non-party must have constructively had his day in court." *Id.* at 314 (citation omitted). TSI contends that Xtria has failed to plead facts showing that IIAI has constructively had this day in court.

To determine whether a court can issue an injunction that will bind a non-party, the *Harris County* panel enumerated several factors to consider, such as whether the non-party was in active concert or participation with the party to the injunction action, whether the non-party was identified in interest or in privity, or whether the non-party was represented by the party to the injunctive action or subject to its control. "The many different terms employed by the courts boil down to the fundamental principle that an injunction does not bind a non-party unless he stands in a special relationship to a party." *Id*. Xtria responds by reasserting its allegation that TSI effectively controls IIAI, and IIAI can be bound by an injunction against TSI under the reasoning of *Harris County*.

To apply the *Harris County* test, the court must ascertain the

nature of the legal obligations of TSI and IIAI *inter se*. At this juncture, the court can only hold that Xtria has made a plausible claim for injunctive relief by alleging that, at all relevant times, TSI has had the right and ability to control, operate, manage, or direct IIAI's activities. The court therefore declines to dismiss Xtria's claim for injunctive relief.

                                VII

In response to TSI's motion, Xtria has filed a motion for leave to amend. It requests that, if the court is inclined to grant any part of TSI's motion, it be allowed to amend. The court denies this motion. The only part of TSI's motion to dismiss that the court has granted pertains to Xtria's declaratory judgment action. Xtria does not need to amend any other part of its amended complaint. And regarding the declaratory judgment action, the court has twice dismissed this claim, and it is persuaded that Xtria cannot plead a claim that would survive Rule 12(b)(6) dismissal, even if Xtria were allowed to replead.

* * *

Accordingly, for the reasons set out, the court grants TSI's July 11, 2007 motion to dismiss Xtria's amended complaint to the extent of dismissing Xtria's declaratory judgment action, and it otherwise denies the motion. Xtria's July 31, 2007 motion for leave to amend is denied.

**SO ORDERED.**

September 18, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE