IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

XTRIA LLC,                          §
                                    §
            Plaintiff,              §
                                    § Civil Action No. 3:07-CV-0160-D
VS.                                 §
                                    §
TRACKING SYSTEMS, INC.,             §
                                    §
            Defendant.              §

MEMORANDUM OPINION

Plaintiff Xtria LLC ("Xtria") sues defendant Tracking Systems, Inc. ("TSI"), alleging that it breached a Settlement Agreement and Release ("Settlement Agreement") between TSI and Xtria by failing to prevent TSI's affiliate, International Insurance Alliance, Inc. ("International"), from initiating, or by failing to cause International to dismiss, an arbitration proceeding that International initiated against Xtria ("Arbitration Proceeding"). Following a bench trial, and for the reasons that follow,[1] the court holds that Xtria failed to prove that Xtria and TSI intended

---

[1] The court sets out in this memorandum opinion its findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a)(1). Although the court has carefully considered the trial testimony and exhibits, this memorandum opinion has been written to comply with the level of detail required in this circuit for findings of fact and conclusions of law. *See, e.g., Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (discussing standards). The court has not set out its findings and conclusions in punctilious detail, slavishly traced the claims issue by issue and witness by witness, or indulged in exegetics, parsing or declaiming every fact and each nuance and hypothesis. It has instead written a memorandum opinion that contains findings and conclusions that provide a clear understanding of the basis for the court's decision. *See id.*

under the Settlement Agreement that TSI would have this obligation.[2] The court therefore enters judgment in favor of TSI.

I

The background facts and procedural history of this case are set out in prior memorandum opinions and orders of the court and need not be repeated at length.[3] In the pretrial order, the parties have entered into 12 pertinent stipulations of fact that are incorporated into this memorandum opinion.[4]

II

To establish a claim for breach of contract under Texas law, Xtria must prove (1) the existence of a valid contract, (2) Xtria performed or tendered performance of its duties under the contract, (3) TSI breached the contract, and (4) Xtria suffered damages as a result of the breach. *See, e.g., Lewis v. Bank of Am. N.A.*, 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law). The only element at

---

[2]Because the court finds in TSI's favor on this basis, it need not consider the affirmative defense of release that TSI raised by trial amendment. Nor need it consider Xtria's trial brief on entry of judgment awarding conditional relief.

[3]Additionally, Xtria requested, without objection from TSI, that the court take judicial notice of its prior rulings in this case. Accordingly, the court's prior memorandum opinions and orders are part of the trial record.

[4]The parties entered into fifteen stipulated facts, but the first two stipulations pertain to the factual predicates for the court's diversity jurisdiction, and the third is actually a conclusion of law that the court has subject matter jurisdiction based on complete diversity and an amount in controversy that exceeds the jurisdictional minimum.

issue is whether TSI breached the Settlement Agreement.[5]  As a result of the prior rulings of the court, Xtria's breach of contract claim reduces to a single fact question to be decided through this bench trial: whether Xtria has proved by a preponderance of the evidence that, under the Settlement Agreement, Xtria and TSI intended that TSI assume the obligation to prevent International from initiating, or to cause International to dismiss, the Arbitration Proceeding against Xtria.

The court has determined in its prior rulings that the Settlement Agreement is ambiguous in addressing this question.  On the one hand,

> [t]he inclusion of the affiliates in [§ 3.1.1 of the Settlement Agreement], through the provision that defines TSI as including its affiliates, coupled with [International's] absence as a signatory to the agreement, suggests that TSI is assuming the obligation of its affiliates' performance.  Because [International] is not a signatory to the [Settlement Agreement], this obligation plausibly falls on TSI.  Otherwise, there is no apparent purpose for including TSI's affiliates in the definition of "TSI" and for providing that the definitions apply "wherever those terms appear throughout the Agreement." The [Settlement Agreement] could have defined the term "TSI" in a way that excluded affiliates, or [§ 3.1.1] could have modified the definition of the term "TSI" for that provision so as to limit it to TSI's conduct alone. . . .  [T]he [Settlement Agreement] can reasonably be interpreted to provide that

---

[5]TSI maintains that Xtria cannot prove that it has suffered damages as a result of a breach.  The court need not address this question because TSI has failed to prove a contractual breach.

- 3 -

>     TSI——on behalf of the affiliates over which it
>     exerted control——assumed performance of the
>     covenant not to sue.

*Xtria LLC v. Tracking Sys., Inc.*, 2007 WL 2719884, at *3-*4 (N.D. Tex. Sept. 18, 2007) (Fitzwater, J.) (footnote omitted).  On the other hand,

>     Xtria's interpretation of the [Settlement
>     Agreement] . . . is not the only reasonable
>     one.  TSI's reliance on the fact that the
>     terms of the [Settlement Agreement] do not
>     create explicit obligations regarding
>     [International's] conduct has force.
>     Moreover, the [Settlement Agreement] can
>     reasonably be read to include TSI's affiliates
>     within the scope of the term "TSI" for the
>     purpose of providing Xtria a defense to an
>     action instigated against it by a TSI
>     affiliate, such as [International], not to
>     create an obligation by TSI to superintend its
>     affiliates.

*Id.* at *4.[6]

"Once a contract is found to be ambiguous, the interpretation of the contract becomes a fact issue."  *Burlington N. & Santa Fe Ry. Co. v. S. Plains Switching, Ltd.*, 174 S.W.3d 348, 358 (Tex. App. 2005, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 394

---

[6] During the pretrial conference, Xtria's counsel indicated that Xtria would argue that, under the Settlement Agreement, the parties intended both interpretations, i.e., that TSI was contractually obligated to superintend its affiliates, and that Xtria would have a defense to an action instigated against it by a TSI affiliate.  Xtria's counsel also acknowledged that for Xtria to prevail at trial, it was obligated to prove by a preponderance of the evidence that the first interpretation was correct, i.e., that the parties intended that TSI assume the obligation of preventing an affiliate such as International from initiating, or causing such an affiliate to dismiss, an action initiated against Xtria.

(Tex. 1983)). "If the written instrument is ambiguous, the trier of fact may look to parol evidence to determine the parties' intent." *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996) (on rehearing) (citing cases). "If . . . the contract [is] ambiguous, . . . the trier of fact may consider the parties' interpretation and other extrinsic evidence." *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 131 (Tex. App. 2000, pet. dism'd) (citing cases). The trier of fact may "[c]onsider all of the facts and circumstances surrounding the making of the agreement, the interpretation placed on the agreement by the parties, and the conduct of the parties." *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, ___ S.W.3d ___, 2008 WL 4355069, at *26 (Tex. App. Aug. 26, 2008, no pet. h.) (brackets in original; quoting jury instruction and concluding that trial court did not abuse discretion in so instructing the jury).

III

The court finds that Xtria failed to prove by a preponderance of the evidence that the parties intended the Settlement Agreement to obligate TSI to prevent an affiliate from initiating, or to cause an affiliate to dismiss, an action[7] against Xtria. Therefore, Xtria failed to prove that the parties intended the

---

[7] By the term "action" the court intends to refer to all of the multiple types of claims included in § 3.1.1 of the Settlement Agreement. For convenience, the court uses the shorthand term "action" to refer to all of them.

Settlement Agreement to obligate TSI to prevent International from initiating, or to cause International to dismiss, the Arbitration Proceeding against Xtria.

TSI and Xtria entered into the Settlement Agreement for the purpose of resolving a dispute that had arisen in connection with TSI's 2000 sale of its eLiens business to Xtria. The Asset Purchase Agreement ("APA") that governed the sale contained an earn-out provision that (simplified for purposes of this opinion) entitled TSI to a percentage of the sales price if Xtria re-sold the eLiens business. Xtria was entitled under the earn-out provision to take certain deductions from the amount that it would otherwise have owed TSI. When Xtria re-sold the eLiens business to ISO Claims Services, Inc. ("ISO"), Xtria in fact asserted that it was allowed to deduct certain expenses from the percentage formula. TSI countered that Xtria was not entitled to these deductions, and it sent a demand letter to Xtria in which it insisted on compliance with the earn-out provision.

It is important to today's case to understand that the dispute that TSI and Xtria were resolving in 2006 pertained to TSI's rights under the earn-out provision of the APA—a controversy that arose from Xtria's sale of the eLiens business to ISO. Any potential dispute between International and Xtria concerning their separate relationship—a 2004 Sales Representative Agreement between Xtria and International—was not the subject of TSI and Xtria's

negotiations or mediation, and they did not intend to resolve any such dispute when they entered into the Settlement Agreement. Moreover, while they may have intended that Xtria, after paying to settle TSI's claim, would be protected if TSI or, *inter alia*, any affiliate attempted to assert any other claims arising from the TSI-Xtria APA or other prior agreements between TSI and Xtria, they did not intend that TSI would be affirmatively obligated to ensure that its affiliates did not bring an action against Xtria. The parties resolved through mediation a dispute that had arisen from their differing views of the amount that Xtria owed TSI under the earn-out provision of the APA. Had they intended to enter into a more global settlement under which TSI was obligated to superintend its affiliates' conduct, they would have explicitly negotiated this point. And the sum that Xtria paid in settlement confirms the parties' mutual intent to resolve the dispute regarding the proper percentage calculation under the earn-out provision, not to ensure that TSI would prevent one of its affiliates ever from suing Xtria, or that TSI would be liable to Xtria for damages or other relief if an affiliate did bring such an action.[8]

When Xtria demanded that TSI arrange for the dismissal of the

---

[8]Additionally, Xtria has failed to persuade the court that Thomas M. Cooney was present during the mediation for the purpose of negotiating the settlement of a dispute between International and Xtria.

Arbitration Proceeding, a lawyer representing TSI asserted in a responsive letter that, for various reasons, the Settlement Agreement was inapplicable.  Xtria maintains that because TSI failed to state in the letter that, if International was its affiliate, TSI was not responsible under the covenant not to sue, this is persuasive evidence that the parties intended the release in the Settlement Agreement to apply.  The court is not persuaded that this relatively brief letter, written by a lawyer who had not drafted the Settlement Agreement, and who was responding within days of the date of Xtria's demand letter, evidences TSI's intent to be obligated to superintend the actions of its affiliates.  What is more persuasive is that TSI almost immediately rejected any possibility that the Settlement Agreement had this intent.  TSI's interpretation of the Settlement Agreement and its conduct under the agreement are persuasive evidence that the parties did not have the intent that Xtria ascribes.

Xtria posits that the Settlement Agreement's covenant not to sue only has meaning if TSI is responsible for the conduct of its affiliates.  The court disagrees.  The covenant not to sue can reasonably be read to provide Xtria a defense to an action brought by an affiliate and that falls within the scope of § 3.1.1.[9]  It

---

[9] The court is not deciding today that the Settlement Agreement does provide such a defense.  But the fact that the contract can reasonably be read this way is a sufficient basis to reject Xtria's argument.

buys peace for Xtria by ensuring that TSI cannot circumvent the covenant not to sue by seeking relief via an affiliate or other covered entity. The covenant therefore serves an important function even without obligating TSI to prevent an affiliate from initiating, or to cause an affiliate to dismiss, an action such as the Arbitration Proceeding that International initiated against Xtria.

* * *

Accordingly, the court finds against Xtria on its breach of contract claim. Combined with the earlier dismissal of Xtria's declaratory judgment action, today's decision results in the dismissal of Xtria's action against TSI with prejudice.

October 23, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE